OPINION *Page 2 
{¶ 1} Appellant-Mother Melissa Metts appeals the decision of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of her minor children to Appellee Stark County Department of Job and Family Services ("SCDJFS").
 {¶ 2} This case comes to us on the expedited calendar and shall be considered in compliance with App.R. 11.1(C).
 STATEMENT OF THE FACTS AND CASE {¶ 3} The relevant facts leading to this appeal are as follows.
 {¶ 4} Appellant Melissa Metts, is the mother of Joseph Metts, d.o.b. July 3, 1992, Zachary Bayouth, d.o.b. May 16, 1994, and Preston Dalesandro, d.o.b. June 22, 2004. The father of Joseph and Zachary has not been involved and Daniel Dalesandro is the father of Preston.
 {¶ 5} Stark County Department of Job and Family Services (SCDJFS) became involved with this family in May of 2005, due to allegations of unstable housing and mental health concerns of the parents.
 {¶ 6} The family was issued a voluntary case plan in May of 2005. (T. at 5). Due to ongoing concerns of domestic violence and instability in their living arrangements, the voluntary case plan was not successful in mitigating the safety concerns in the home. (T. at 5-7).
 {¶ 7} On October 6, 2005, SCDJFS filed a complaint alleging the children to be dependent, neglected and abused. On the same date an emergency shelter care hearing was held with emergency temporary custody being vested in the SCDJFS. *Page 3 
 {¶ 8} On December 20, 2005, Appellant stipulated to the Court finding of dependency and temporary custody was vested in the SCDJFS.
 {¶ 9} The children have remained in the continuous custody of the SCDJFS since their initial removal. (T. at 9).
 {¶ 10} Appellant-Mother was provided a reunification plan with services calculated to facilitate reunification of the family.
 {¶ 11} During the case, Appellant-Mother requested a no contact order be placed between Mr. Dalesandro and herself, which the trial court granted. (T. at 17). Despite the order, Appellant-Mother then continued to cohabitate with Mr. Dalesandro throughout the case. (T. at 17).
 {¶ 12} On March 1, 2007, after a series of timely reviews and the granting of extensions of temporary custody to attempt reunification, SCDFJS filed for permanent custody.
 {¶ 13} The matter was set for May 8, 2007.
 {¶ 14} As late as April 2007, Mr. Dalesandro reported that Appellant-Mother had "physically harmed" him on two occasions. (T. at 13). The caseworker observed physical injuries on Mr. Dalesandro, which he attributed to the Appellant-Mother. Id.
 {¶ 15} During an evaluation in April, 2007, Joseph and Zachary reported being physically abused by Appellant-Mother. (T. at 60). Zachary reported Appellant-Mother had kicked him in the side. (T. at 60). Both children reported witnessing Appellant-Mother abuse Preston by kicking him, hitting him and threatening to throw him down the stairs. (T. at 60-61). Joseph recalled times when Appellant-Mother slammed his face into a window and threatened to throw him out the window. (T. at 60). *Page 4 
 {¶ 16} At the May 8, 2007, hearing, the trial court accepted a stipulation to the motion for permanent custody from Mr. Daniel Dalesandro.
 {¶ 17} The matter was set for trial on June 26, 2007.
 {¶ 18} On June 26, 2007, Appellant was present with counsel. Evidence through various witnesses and exhibits were submitted to the trial court.
 {¶ 19} On June 29, 2007, the trial court filed a judgment entry and findings of facts which vested permanent custody with SCDJFS and terminated Appellant-Mother's parental rights.
 {¶ 20} Appellant timely filed a notice of appeal and herein raises the following Assignments of Error:
 ASSIGNMENTS OF ERROR {¶ 21} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE
 {¶ 22} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY RULING THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY GRANTING OF PERMANENT CUSTODY TO SCDJFS."
 I., II. {¶ 23} We will address Appellant-Mother's First and Second Assignments of Error together.
 {¶ 24} Appellant-Mother first argues that the trial court's decision finding that the minor children could not be placed with her within a reasonable time was against the manifest weight of the evidence. *Page 5 
 {¶ 25} Revised Code § 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. This statute provides as follows:
 {¶ 26} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 27} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 28} "(b) The child is abandoned.
 {¶ 29} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 30} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 31} Ohio's present statutory scheme requires a court, in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (see R.C. 2151.414(B)(1)(a), supra), to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[following the placement of the child outside the child's home and notwithstanding *Page 6 
reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." See R.C. 2151.414(E)(1); In reBender, Stark App. No. 2004CA00015, 2004-Ohio-2268.
 {¶ 32} In the case sub judice, the trial court found that the minor children cannot or should not be placed with either parent within a reasonable time.
 {¶ 33} In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (see R.C. § 2151.414(B)(1)(a), supra), a trial court is to consider the existence of one or more factors under R.C. § 2151.414(E), which includes:
 {¶ 34} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 35} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes *Page 7 
the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;"
 {¶ 36} In the case sub judice, in addition to finding, pursuant to R.C. § 2151.414(B)(1)(a), that the children could not or should not be placed with either parent within a reasonable time, the trial court also found, pursuant to R.C. § 2151.414(B)(1)(d), that the children had been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months.
 {¶ 37} As findings under R.C. § 2151.414(B)(1)(a) and R.C. §2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody.In re Langford Children, Stark App. No. 2004CA00349, 2005-Ohio-2304, at paragraph 17. We therefore conclude the trial court's finding that the children had been in temporary custody a period of time in excess of twelve of the prior twenty-two months with regard to this issue is not against the manifest weight of the evidence.
 {¶ 38} Moreover, we find that the trial court's finding that the children cannot and should not be placed with Appellant-Mother within a reasonable period of time is not against the manifest weight of the evidence. Testimony was adduced at the hearing that Appellant-Mother was living in her third residence since the trial court became involved in this case due to having been evicted. (T. at 11). Also, the caseworker testified that there were ongoing concerns of domestic violence as well as Appellant-Mother's failure to recognize her own mental health needs. Id. The caseworker also testified as to *Page 8 
reports of physical altercations between Appellant-Mother and Mr. Dalesandro as well as incidents where the two were arguing in front of the children. (T. at 12-13).
 {¶ 39} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. § 2151.414(D). These factors are as follows:
 {¶ 40} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 41} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 42} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 43} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 44} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 45} It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." Inre *Page 9 Mauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quotingIn re Awkal (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.
 {¶ 46} The trial court, in making its best interest determination, found that "despite the minimal bond that may have developed between any parent and Joseph Metts, Zachary Bayouth and Preston Dalesandro, the harm caused by severing the bond with the parents is outweighed by the benefits of permanency in these children's lives."
 {¶ 47} In making said determination, the trial court had before it testimony from Aimee Thomas of Northeast Ohio Behavioral Health and Tina Bossart, who was the ongoing caseworker in addition to the report of the guardian as litem (GAL).
 {¶ 48} Aimee Thomas testified that she had both Joseph and Zachary perform intelligence tests. She stated that Zachary has an IQ of 86 and probably has a learning disability. She further stated that he is moderately depressed. She described Zachary as ambivalent about returning to his Mother though he has indicated his dislike of the foster care system. Zachary has a nervous stutter and is in counseling. She stated that Zachary is more anxious than his brother, Joseph. She went on to state that Joseph's IQ is 95. While he did not present as depressed, she explained that he has been on antidepressants for a year. She stated that he appears to be coping with the current situation and although Joseph would prefer to be home due to his Mother's lax rules, he is not optimistic about his Mother making changes, and he does not want to move again. (T. at 70).
 {¶ 49} Ms. Thomas stated that both boys express a lot of fear and anger about their Mother, and Joseph described her as not being very nurturing. (T. at 70). When *Page 10 
asked if she would have concerns about the children if they were returned to Mother, Ms. Thomas answered with an emphatic "absolutely." Ms. Thomas felt that the boys would accept permanent custody without a great deal of stress and that the finality and stability of a grant of permanent custody would give them security. She felt the benefit of that stability outweighs the harm of breaking any bond which may exist.
 {¶ 50} The trial court also heard from Tina Bossart, who testified that Zachary has a learning disability and is under and individualized education plan in school. (T. at 74-75). Zachary's grades were all A's and B's. Preston was evaluated at Concorde kids and is in speech therapy. (T. at 75). She stated that he will need intensive therapy due to his delays. However, while in foster care he has made great progress. He has both speech delays and trouble walking. His mobility has improved after starting in physical therapy. Joseph appears to be socially delayed and has trouble making friends and fitting in at school. (T. at 75). He was in counseling with Cassie Hornbeck until August of 2006. (T. at 76). He is currently taking Prozac but is not in counseling. Id. His grades have improved and, as Ms. Thomas testified, he is coping. All three children are in a purchased care foster home. This is not a foster to adopt home. The boys are very bonded to each other. (T. at 78). Typical sibling issues exist between Joseph and Zachary, but both are protective of Preston.
 {¶ 51} Ms. Bossart stated that while the kids enjoy seeing their Mother, their bond is hard to gauge. (T. at 80). They interacted with their Father more during the visits. Id. Appellant-Mother's focus during the visits was mainly on herself. (T. at 80-81). She concluded that the boys would benefit from adoption and the stability permanency would provide. *Page 11 
 {¶ 52} The trial court also had before it the Guardian ad Litem report which indicated that the children were ambivalent about returning home. The children know that they cannot return home until their Mother and Father stop fighting and they know that will never happen. The GAL stated that the children expressed that they would like to continue contact with Mother, but only through visits. The GAL recommended either a Planned Permanent Living Arrangement (PPLA) or Permanent Custody of Joseph Metts, Zachary Bayouth and Preston Dalesandro to the SCDJFS.
 {¶ 53} The trial court noted that SCDJFS did not request PPLA and, therefore the trial court is precluded from ordering PPLA.
 {¶ 54} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758.
 {¶ 55} Based on the foregoing, we find the trial court's conclusions pursuant to R.C. § 2151.414(B) as to Appellant-Mother, are supported by the weight of the evidence.
 {¶ 56} We further find the trial court's grant of permanent custody of the minor children to SCDJFS was made in the consideration of the children's best interests and did not constitute an error or an abuse of discretion. *Page 12 
 {¶ 57} Appellant's First and Second Assignments of Error are overruled. {¶ 58} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.
 Wise, J. Hoffman, P. J., and Farmer, J., concur. *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.
 Costs assessed to Appellant. *Page 1